## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CHARMAINE BROWN,**

      **Petitioner,**

**v.**                                  **Case No. 3:21cv753-MCR/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On May 3, 2021, Petitioner Charmaine Brown, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On October 13, 2021, Respondent filed an answer, with exhibits. ECF No. 13; *see* ECF No. 16 (one exhibit filed under seal). Petitioner has not filed a reply, although she was given the opportunity to do so. *See* ECF Nos. 12, 19, 21.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the

reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By second amended information filed May 9, 2016, in Escambia County Circuit Court Case 2015-CF-3371, the State of Florida charged Petitioner Charmaine Brown with nine counts, in connection with events that occurred on or about July 30, 2015:

(1) aggravated assault on a law enforcement officer, a second degree felony, in violation of sections 775.0823, 784.021(1)(a), and 784.07(2)(c), Florida Statutes;

(2) aggravated battery on a law enforcement officer, a first degree felony, in violation of sections 784.045(1)(a) and 784.07(2)(d), Florida Statutes;

(3) possession of a firearm by a convicted felon, a second degree felony, in violation of sections 775.087(2) and 790.23(1)(a), Florida Statutes;

(4) battery on a person 65 years of age or older, a third degree felony, in violation of sections 784.08(2)(c) and 784.03 893.13(6)(b), Florida Statutes;

(5) grand theft of a firearm, a third degree felony, in violation of sections 812.014(1)(a)-(b) and 812.014(2)(c)5., Florida Statutes;

(6) grand theft auto, a third degree felony, in violation of sections 812.014(1)(a)-(b) and 812.014(2)(c)6., Florida Statutes;

(7)  fleeing or attempting to elude a law enforcement officer in an authorized agency vehicle with siren and lights activated, a second degree felony, in violation of section 316.1935(3)(a), Florida Statutes;

(8)  criminal mischief, a third degree felony, in violation of section 806.13(1)(a) and (b)3., Florida Statutes; and

(9)  resisting an officer without violence, a first degree misdemeanor, in violation of section 843.02, Florida Statutes.

Ex. A at 7-9.[1]  *See* Ex. A at 1-2 (information), 4-6 (amended information). Brown proceeded to a jury trial in October 2016.  Ex. B (trial transcript). Brown testified at the trial.  *Id*. at 381-439.  The jury found her guilty as charged on Counts 1, 2, 5, 6, 7, 8, and 9.  *Id*. at 530-32.  On December 13, 2016, the trial judge adjudicated Brown guilty and sentenced her to fifteen (15) years in prison, with a minimum mandatory term of fifteen (15) years as a prison releasee reoffender (PRR) on Count 1; thirty (30) years in prison on Count 2; fifteen (15) years in prison on Count 7; and five (5) years in prison on Counts 5, 6, 8, with all the sentences to run concurrently.  Ex. A at 184-86; 213-23.  The court sentenced her to time served on Count 9.  *Id*. at 186-87.  The State announced a nolle prosequi as to Counts 3 and 4.  Ex. A at 182, 187; *see id*. at 213; Ex. B at 139.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.13.

Brown appealed her judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D16-5789.  Ex. E.  Through counsel, she filed an Initial Brief raising four points.  Ex. E.  The State filed an answer brief.  Ex. F.  Brown filed a reply brief.  Ex. G.  On December 11, 2018, the First DCA affirmed the convictions and sentences without a written opinion.  Ex. H; Brown v. State, 257 So. 3d 957 (Fla. 1st DCA 2018).  The mandate issued January 2, 2019.  Ex. H.

On April 30, 2019, Brown filed a pro se motion to modify her sentence, pursuant to Florida Rule of Criminal Procedure 3.800(c).  Ex. I at 1-4.  By order rendered April 1, 2020, the trial court denied the motion.  *Id*. at 5-6.

In the meantime, on February 26, 2020, Brown filed a pro se "Amended Motion for Post Conviction Relief," pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. K at 10-20.  By order on April 30, 2020, the state postconviction trial court struck the motion as "facially and/or legally insufficient" and allowed time for filing an amended motion.  *Id*. at 21-22, 26-27.  On November 18, 2020, Brown filed an amended Rule 3.850 motion, asserting four claims.  *Id*. at 28-36.  By order rendered December 25, 2020, the state postconviction court summarily denied relief.  *Id*. at 37-45 (exclusive of attachments).  Brown appealed to the First DCA, assigned case number 1D21-193.  Ex. K at 71; Exs. J, L.  No briefs were filed.  *See* Ex. J.  On March

17, 2021, the First DCA per curiam affirmed the case without a written opinion. Ex. L; Brown v. State, 313 So. 3d 1151 (Fla. 1st DCA 2021). The mandate issued April 14, 2021. Ex. L.

On May 3, 2021, Brown filed her § 2254 petition. ECF No. 1. She raises four grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – Right to Waive Six-Person Jury**:  Trial counsel provided ineffective assistance by failing "to advise Defendant of her right to waive 6 panel jury," when "[d]uring the course of the trial, it was found that Juror Shilston had a familial relation to State's witness Deputy Sharpe." *Id.* at 5.

(2) **IAC – No Motion to Dismiss Aggravated Battery Charge**: Trial counsel provided ineffective assistance by "failing to file [a] motion to dismiss [the] aggravated battery charge" as "the facts did not support this specific intent crime." *Id.* at 7.

(3) **IAC – Failure to Object to Closing Argument**:  Trial counsel provided ineffective assistance by "failing to object to [the] State's inflammatory prejudicial closing argument," given "the State's accusation and characterization of the Defendant as a liar." *Id.* at 8.

(4) **IAC – Failure to Obtain Competency Evaluation**:  Trial counsel provided ineffective assistance by failing "to have Defendant independently evaluated to determine her competency," as Defendant was and remains incompetent, and "the court lacked jurisdiction to enter a judgment and impose a sentence." *Id.* at 10.

On October 13, 2021, Respondent filed an answer, with exhibits. ECF Nos. 13, 16. Brown has not filed a reply, although she was given the opportunity to do so. *See* ECF Nos. 12, 19, 21.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1:  IAC – Right to Waive Six-Person Jury

In her first ground, Petitioner Brown asserts her trial counsel provided ineffective assistance by not advising her of her right to waive a six-person jury when "[d]uring the course of the trial, it was found that Juror Shilston had a familial relation to State's witness Deputy Sharpe."  ECF No. 1 at 5.  Brown asserts "[t]he juror's bias tainted the verdict and destroys confidence in the outcome."

As Respondent indicates, ECF No. 13 at 13, Brown raised the same or similar claim as the first ground in her amended Rule 3.850 motion, Ex. K at 29-30.  After setting forth the Strickland standard, the state postconviction trial court denied the claim, making the following findings:

> In Defendant's first claim, Defendant alleges that her attorney was ineffective for failing to advise her of her right to waive a six-person jury.  Counsel was obligated to do so, she argues, when a juror, Ms. Shilston, told the court deputy that she was a relative of a state witness, Deputy Sharp.  Defendant argues that "defense counsel had a duty to confer with the defendant and advise her of her right to waive a six-person jury, and instead, proceed to trial with a five-person jury."  She states, "Defense counsel failed to perform this duty, and thus, deprived the defendant of a fair and impartial jury.  Had defense counsel advised the defendant that, due to the juror being related to the State's witness against her, she had the right to waive a six-person jury and have that juror removed from jury duty, the defendant would have chosen to waive her six-person jury, and

proceed with a five-person jury." Defendant further alleges that the five-person jury "would not have been able to reach a verdict against the defendant out of partiality," and she "would not have been found guilty."

The record demonstrates that during the trial, one of the jurors, Ms. Shilston, told the court deputy that she was a relative of Escambia County Sheriff's Deputy Steve Sharp. [Ex. B at 316, 318.] The Court conducted an inquiry <u>at the request of defense counsel</u>, [*id*. at 316-17,] and the following exchange occurred:

Court:    And I understand that you saw Deputy Sharp come to the stand. You recognize that you might have known him?

Juror:    We were related at one time.

Court:    Oh, okay.

Juror:    The last I knew of him he was living in Georgia. I had no idea he was back. He divorced a niece of my husband's several years ago.

Court:    Okay. A niece of your husband's was married to him?

Juror:    Yes.

Court:    Okay. So would you say you've been to his home or –

Juror:    No – oh, maybe once, yes.

Court:    But you've seen him at maybe family reunions or something?

Juror:    I married into a large family. It's my fault.

Court:    Sometimes that happens. But whatever decision you would make here today, whatever

> it might be once I tell you can start your deliberations would you feel uncomfortable if you bumped into him and something were to somehow come up about this trial?

Juror:     No.

Court:     Counsel have any questions for her?

Ms. Harris (defense counsel):  No, Your Honor.  Thank you.

[*Id.* at 319-20.]

Defendant has failed to demonstrate that counsel was deficient in her performance or that she was prejudiced.  The record shows that the juror revealed the relationship as soon as she was aware of it, and the Court asked appropriate questions of the juror at the request of defense counsel.  The juror indicated that the officer was previously married to a member of the juror's husband's family, and that the individuals were no longer married.  In short, the juror described a very slight previous acquaintance with the officer.

Furthermore, it does not appear that the Court would have been required to remove the jury had it been requested to do so.  The case of <u>Bigham v. State</u>, 995 So. 2d 207 (Fla. 2008) is analogous.  The <u>Bigham</u> court wrote:

> Bigham next alleges that the trial court improperly allowed a juror to remain on the panel after the juror informed the court he recognized one of the State's witnesses once testimony began.  Bigham claims he is entitled to a new trial because this juror concealed material information.
>
> The trial court conducted a full inquiry of the juror's contact with the witness.  On the record it appears that the juror's failure to disclose his knowledge of a State witness was not material.  *See* <u>De La Rosa v. Zequeira</u>, 659 So. 2d 239 (Fla. 1995).  Rather, the

record reflects that his familiarity with the State's witness was casual and distant. On his own initiative, the juror stated that he did not know a police detective's last name, but recognized him as someone who had been a past acquaintance. He explained that he worked security at a bar that the detective frequented five to seven years prior to the trial. He further explained that any conversation between the two had been brief and did not reflect the detective's work. Secondly, the juror did not attempt to conceal the information and came forward as soon as it was apparent that he did, in fact, recognize the officer. Finally, the juror answered the question posed during voir dire correctly, because he was actually asked if he was related to or close friends with any law enforcement officers, and even given his passing acquaintance with Hall, there was no evidence that he was related to or close friends with him. We find no error in the trial court's resolution of this issue.

*Id*. at 215.

In addition, there would have [been] no need to proceed with a five-person jury as an alternate juror was available, had Defendant or counsel elected to request the removal of Ms. Shilston. Therefore, counsel cannot be deficient for failing to discuss this option with Defendant. Lastly, Defendant's conclusion that she would have been found not guilty had her jury been comprised of five persons rather than six is purely speculative. She is not entitled to relief on this basis.

Ex. K at 39-41 (footnotes omitted).

As set forth above, Brown appealed the denial of relief and, on March 17, 2021, the First DCA per curiam affirmed the case without a written opinion. Ex. L; Brown v. State, 313 So. 3d 1151 (Fla. 1st DCA 2021). This

adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

Specifically, the record references in brackets in the quoted portions of the order, above, support the court's findings regarding Juror Shilston's recognition of one of the witnesses during the trial, and the court's questioning of Juror Shilston thereafter.  The trial transcript reflects this occurred just before the prosecution called its last witness.  Ex. B at 315.

As the state postconviction court determined, nothing indicates the trial judge would have been required to remove Juror Shilston had counsel made that request.  *See* Bigham, 995 So. 2d at 215.  *Cf., e.g.*, McNeil v. State, 158

So. 3d 626, 627-28 (Fla. 5th DCA 2014) (explaining "[t]he trial judge is vested with discretion in determining whether a juror has engaged in misconduct that warrants removal from the jury" but "that discretion is not without bounds," and reversing and remanding for new trial where trial court erred in allowing State to use peremptory challenge to strike juror after trial had started where, among other things, "[a]s in Bigham, the relationship [between the juror and the witness] was casual and distant"); Nicholas v. State, 47 So. 3d 297, 302-04 (Fla. 2d DCA 2010) (holding trial court did not reversibly err in removing juror during trial where, during trial, it was revealed that juror knew both the defendant and a key witness:  "If a juror conceals relevant and material information, his subsequent claim that he can be fair and impartial is of no moment. . . . [I]f there is any reasonable doubt as to whether a particular juror can render an impartial verdict based solely on the evidence presented and the law announced at trial, that juror should be removed, even if the juror states that he can be impartial.  The trial court had the best overall vantage point to determine if the jury held a bias in favor of, or against, one of the parties." (citations omitted)).

From the record, Juror Shilston's familiarity with the State's witness was casual and distant; Juror Shilston did not attempt to conceal anything and said something as soon as she recognized the witness; and, during

subsequent questioning by the trial judge, Juror Shilston indicated she was no longer related to the witness and would not be uncomfortable remaining on the jury.  *See* Bigham, 995 So. 2d at 215.  *See also, generally, e.g.*, Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007) ("[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased."); Kopsho v. State, 959 So. 2d 168, 170 (Fla. 2007) (explaining test trial courts use "for determining juror competence is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court" and "[a] juror must be excused for cause if any reasonable doubt exists as to whether the juror possess an impartial state of mind"); Parker v. State, 641 So. 2d 369, 373 (Fla. 1994) ("In evaluating a juror's qualifications, the trial judge should evaluate all of the questions and answers posed to or received from the juror.").  Nothing indicates Juror Shilston could not render a verdict solely on the evidence and the instructions given by the judge.  *See, e.g.*, Patton v. Yount, 467 U.S. 1025, 1037 n. 12, 104 S. Ct. 2885 (1984) (explaining "constitutional standard that a juror is impartial only if he can lay aside his opinion and render verdict based on evidence presented in court" is question of federal law and "whether a juror can in fact do that is a determination to

which habeas courts owe special deference"). Moreover, as the post-conviction court explained, even if the trial judge had decided to remove Juror Shilston, Brown would have still had a six-person jury as the alternate juror, Mr. Booker, would then have been designated to fill the vacancy. *See* Ex. B at 138, 526-27.

Based on the foregoing, Petitioner Brown has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

**Ground 2**:  **IAC – No Motion to Dismiss Aggravated Battery Charge**

In her second ground, Petitioner Brown asserts trial counsel provided ineffective assistance by "failing to file [a] motion to dismiss [the] aggravated battery charge" as "the facts did not support this specific intent crime."  ECF No. 1 at 7.  As Respondent indicates, ECF No. 13 at 19, Brown raised this claim as the second ground in her amended Rule 3.850 motion, Ex. K at 30-31.  The state postconviction trial court denied the claim, making the following findings:

> In her second ground, Defendant alleges that her counsel was ineffective for failing to file a motion to dismiss the aggravated battery charge.  She states that the "circumstances surrounding the State's position that the Defendant purposely

used a vehicle to strike Deputy Ward's unmarked vehicle, did not support the specific intent crime of aggravated battery."

As it pertains to the charge of aggravated battery on a law enforcement officer, Defendant was alleged to have rammed her car into a vehicle driven by Deputy Mike Ward.  Defendant asserts that the "State presented an unfounded 'intent' theory to the jury, that the defendant intended to strike Deputy Ward with the vehicle she was in."  Had counsel moved to dismiss, the Court "would have evaluated the argument and evidence presented by counsel that there was no intent to strike Deputy Ward's vehicle, and granted the motion to dismiss."  Had counsel filed an appropriate motion, she concludes that she would not have been forced to trial on that offense and would not have been found guilty.

Defendant has failed to demonstrate deficient performance or prejudice.  Counsel was not deficient for failing to file a motion to dismiss, because intent is not an issue appropriately determined by the court on a motion to dismiss.  *See* <u>State v. Atkinson</u>, 490 So. 2d 1363, 1365 (Fla. 5th DCA 1986) ("In ruling on a 3.190(c)(4) motion to dismiss, the trial judge must look only to the prima facie sufficiency of the alleged facts; the trial judge may not evaluate the evidence.  Generally, the intent of the defendant is not an issue for determination on a motion to dismiss.").

Furthermore, counsel did raise the issue of Defendant's intent in a motion for judgment of acquittal, saying, "I would ask that you grant a JOA as to really all these crimes, except, perhaps, the resisting without violence in that the State has not produced the evidence of criminal intent on the part of the client to do any of these alleged crimes."  After brief argument, the Court denied the motion.

"A trial court should rarely, if ever, grant a motion for judgment of acquittal based on the state's failure to prove mental intent.  Whether one had intent is generally a question given to a jury, for reasonable men may differ in determining intent when taking into consideration the surrounding circumstances."  <u>Knight</u>

> v. State, 107 So. 3d 449, 464 (Fla. 5th DCA 2013) (internal
> citations and quotations omitted).  Defendant has failed to show
> an appropriate legal basis existed to move to dismiss the charges
> prior to trial, and has further failed to demonstrate that counsel
> performed deficiently as to this issue during the course of the
> trial.  Defendant is not entitled to relief on this basis.

Ex. K at 41-43 (footnote omitted).  On appeal, the First DCA per curiam

affirmed the case without a written opinion.  Ex. L; Brown v. State, 313 So.

3d 1151 (Fla. 1st DCA 2021).  This adjudication on the merits is entitled to

AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is

set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at

1254-55.  A review of the record supports the state courts' determination.

*See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as the state postconviction court explained, defense

counsel did not perform deficiently by not filing a motion to dismiss the

aggravated battery charge for lack of intent because intent is not an issue

properly addressed by the court on a motion to dismiss.  *See, e.g.*, Atkinson,

490 So. 2d at 1365.  As the court also explained, defense counsel did raise

the intent issue in moving for judgment of acquittal.  *See* Ex. B at 356

(defense counsel:  "I would ask that you grant a JOA as to really all these

crimes, except, perhaps, the resisting without violence in that the State has

not produced the evidence of criminal intent on the part of the client to do

any of these alleged crimes.").  The trial judge denied the motion, finding the

prosecution had presented a prima facie case on each charge. *Id*. at 358. The record and Florida law support that determination.

Specifically, under Florida law, an aggravated battery with a vehicle occurs when a defendant uses a motor vehicle to "[a]ctually and intentionally touch[] or strike[] another person against the will of the other." § 784.03(1)(a), Fla. Stat. (2015); *see* § 784.045(1)(a)2., Fla. Stat. (2015) ("A person commits aggravated battery who, in committing battery . . . [u]ses a deadly weapon."). *See also* Ex. B at 505-06 (jury instruction). The prosecution must also show "the occupants of the rammed vehicle were at least jostled or moved about within their vehicle." Yarn v. State, 106 So. 3d 39, 41 (Fla. 2d DCA 2013) (quoting V.A. v. State, 819 So. 2d 847, 849 (Fla. 3d DCA 2002), and also explaining: "With respect to the aggravated battery on Deputy Wolfinger, the trial court properly denied the motion for judgment of acquittal because the State presented sufficient evidence of Yarn's intent to strike the deputy based on Yarn's actions in ramming the [deputy's] Tahoe. . . . Intent is a required element of battery, and proof of intent is usually determined by the surrounding circumstances.").

In this case, the prosecution presented testimony from the victim, Don Lowell, that he woke up to find Brown going through his things and, when Lowell pulled a gun and yelled at her to get out of his house, Brown grabbed

the gun and pointed it at him.  Ex. B at 165-67.  Lowell further testified that "this guy" (later identified as Derrick Harris) ran in and got between him and Brown; the man and Brown "wrestled over" the gun, which then went off, leaving a bullet hole in the wall.  *Id*. at 168.  Brown and the man ran out of the house and took Lowell's truck without his permission.  *Id*.  Lowell called the police; Brown had his keys, his wallet, and his gun.  Ex. B at 168-70.

Officer Mike Ward testified that a high-speed chase by law enforcement ensued during which Brown, driving the victim's truck, almost collided with several vehicles and ultimately struck the vehicle of Deputy Mike Ward.  Ex. B at 272-73.  Ward testified his vehicle, a Tahoe, was not marked but it did have lights and sirens on top, which were engaged at the time of the collision.  *Id*. at 275-76.  Ward testified he saw the truck driven by Brown coming toward him with no sign of slowing down; he testified his right knee was slightly injured in the collision, as "when the impact happened, [he] kind of, slid forward and down."  *Id*. at 277.  Another officer who witnessed the collision testified that Brown did not slow down at all in approaching Ward's Tahoe.  *Id*. at 247.

Based on the foregoing, Petitioner Brown has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable

determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground
should be denied.

### Ground 3:  IAC – Failure to Object to Closing Argument

In her third ground, Petitioner Brown asserts her trial counsel provided
ineffective assistance by "failing to object to [the] State's inflammatory
prejudicial closing argument," given "the State's accusation and
characterization of the Defendant as a liar." ECF No. 1 at 8.   Brown asserts
trial counsel "had a duty to object, had he done so there is every reason to
believe the comment would have been stricken and the jurors would have
been instructed to ignore it," and "[c]ounsel would have had the opportunity
to move for mistrial." *Id*.

As Respondent indicates, ECF No. 13 at 27, Brown raised this claim
as the third ground in her amended Rule 3.850 motion, Ex. K at 31-32.   The
state postconviction trial court denied the claim, making the following
findings:

> In her third claim, Defendant asserts that her counsel was
> ineffective for failing to object to improper comments by the
> prosecution during closing arguments.   She states, "During
> closing arguments, the State called the Defendant a 'liar,' stating
> that because her liberty was at stake, she had a motive to lie
> about the facts regarding the case."  She asserts that the State's
> comment "was not supported by the evidence and was
> prejudicial and inflammatory toward a fair trial."   Defendant
> concludes that defense counsel had a duty to object and move
> for a mistrial, but did not, and as a result, "the jury was led to

believe that the defendant was not credible, and in fact, a 'liar,' as the State had maintained."  Had counsel objected, Defendant asserts that "there is a probability that the comment would have been stricken from the record," and that had counsel moved for a mistrial, she would have had a trial "that was fair and impartial," and the jury would not have convicted her.

A prosecutor cannot, in closing arguments, imply that the State would not be prosecuting anyone who was not guilty or call the defendant a liar.  Fountain v. State, 275 So. 3d 253, 255 (Fla. 1st DCA 2019).  However, Defendant has pointed to no specific instance in which the State called Defendant a "liar," and the Court has reviewed the entirety of the State's closing argument and found none.  While the State did address Defendant's potential motives in closing arguments, in the context of analyzing the application of the standard jury instructions, Defendant has failed to point to any particular comments which would rise to a level requiring postconviction relief.

> For improper argument to require a mistrial, the comments must "deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than . . . it would have otherwise."  Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (quoting Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994)). Jones has not shown that the prosecutor's comments rose to this level.  See Darling, 966 So. 2d at 382 ("The defendant carries the burden to overcome the presumption of effective assistance . . . .").

Jones v. State, 998 So. 2d 573, 589 (Fla. 2008).

Consequently, Defendant is not entitled to relief on the basis of this claim.

Ex. K at 43-44 (footnote omitted).  On appeal, the First DCA per curiam

affirmed the case without a written opinion.  Ex. L; <u>Brown v. State</u>, 313 So. 3d 1151 (Fla. 1st DCA 2021).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* <u>Richter</u>, 562 U.S. at 99; <u>Wright</u>, 278 F.3d at 1254-55.  A review of the record supports the state courts' determination. *See* <u>Wilson</u>, -- U.S. --, 138 S. Ct. at 1192.

In particular, as the state postconviction court found, a review of the prosecutor's closing arguments reveals no instance where the prosecutor specifically and directly called Brown a "liar."  *See* Ex. B at 441-75.  Brown had testified in her defense that, among other things, she had been kidnapped at gunpoint by Derrick Harris, her former boyfriend, and he had forced her to flee, such that she was entitled to a defense of duress to the crimes charged.  *See id*. at 392-413.  The portion of the prosecutor's closing which Brown appears to take issue with involves the prosecutor referring to factors to consider in weighing a witness's credibility, including Brown's possible motive in testifying:

> So now it comes down to weighing all of this evidence and looking at the credibility of the witnesses that were here to testify, and you are the ones that get to decide what evidence is important and what evidence is not important or what evidence is believable and what evidence is not believable, and you have to use your common sense as you go through that, as you decide what you should believe and what you should not believe.

And some of the factors, the Judge has already read these to you at the beginning, but some of the factors are this: Was the witness honest and straight forward in answering the questions? Think of all the deputies that testified today. They were pretty direct with their answers. What they remembered, they said they remembered. What they didn't remember, they said they didn't remember. The witness – and this applies to every witness that testified, including the Defendant. Okay? So you have to consider whether or not she was honest and straightforward in answering the questions.

Does she have – does the witness have some interest in how the case should be decided? Think about all these deputies that came up here today – this happened over a year ago. Imagine how many cases they've been involved in since over a year ago when this actually happened. The Defendant, however, as the witness, clearly has an interest in how this case is going to be decided. It's her liberty interest at sake. She has the motive to lie about it.

Does the witnesses' testimony agree with the other testimony in evidence in the case? Does Charmaine Brown's testimony agree with Don Lowell? Does it agree with his 911 call that's made before she commits any of these acts? Is her story about Derrick Harris consistent with that?

Ex. B at 457-59.

In Florida, both the State and the defense have wide latitude in closing arguments. *See, e.g.*, <u>Miller v. State</u>, 161 So. 3d 354, 382 (Fla. 2015) (explaining that "[i]n Florida, wide latitude is permitted in presenting opening and closing statements to a jury, and comments by the prosecutor will merit a mistrial only when they deprive the defendant of a fair and impartial trial, materially contribute to the conviction, are so harmful or fundamentally

tainted as to require a new trial, or are so inflammatory they might have influenced the jury to reach a more severe verdict that it would have otherwise rendered"); Ford v. State, 802 So. 2d 1121, 1129 (Fla. 2001) ("Both the prosecutor and defense counsel are granted wide latitude in closing argument" and "[a] mistrial is appropriate only where a statement is so prejudicial that it vitiates the entire trial.").  The prosecutor is "allowed to argue reasonable inferences form the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence."  Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006).

Here, the prosecutor's unobjected-to comments do not appear improper as they ask the jury to evaluate the evidence presented and determine, as the finder of fact, what happened in this case.  *See, e.g*., Griffin v. State, 866 So. 2d 1, 16 (Fla. 2003) (explaining that, in closing argument, prosecutor may "review the evidence and ... explicate those inferences which may reasonably be drawn from the evidence"). *See also, e.g*., Chandler v. Crosby, 454 F. Supp. 2d 1137, 1178-79 (M.D. Fla. 2006) (analyzing IAC claim for failure to object to prosecutor's statements during closing and explaining, "To amount to a constitutional violation, the prosecutor's remarks must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' ... Federal case law regarding closing

statements is the same as Florida law." (citations omitted)); Steurer v. Crews, No. 4:10cv383–RH/EMT, 2013 WL 4096120 at *21-22 (N.D. Fla. Aug. 11, 2013) (order adopting report and recommendation which, among other grounds, addressed claim asserting IAC for failing to object to prosecutor's allegedly improper closing argument that asked jury "to render a verdict that finds him guilty as charged .... Render a verdict that speaks the truth," and explained counsel was not deficient for failing to object because the comments were not improper: "[T]he prosecutor's comments in the instant case properly commented on the jury's obligation to determine the credibility of the witnesses' testimony and did not suggest any improper basis for reaching a verdict. There was no suggestion that the jurors' determination of who was telling the truth should be the sole basis for the jury's verdict; instead the prosecutor asked the jury to find Petitioner guilty 'because the evidence and the law and your common sense require it.'").  Defense counsel did not perform deficiently by not raising a meritless objection.  *See, e.g.*, Guardado v. State, 176 So. 3d 886, 889 (Fla. 2015); Freeman v. Att'y Gen., State of Fla., 536 F.3d 1225, 1233 (11th Cir. 2008).

Based on the foregoing, Brown has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable

determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

### <u>Ground 4</u>:  IAC – Failure to Obtain Competency Evaluation

In her fourth ground, Petitioner Brown asserts her trial counsel provided ineffective assistance by failing "to have Defendant independently evaluated to determine her competency," as Defendant was and remains incompetent, and "the court lacked jurisdiction to enter a judgment and impose a sentence."  ECF No. 1 at 10.  As Respondent indicates, ECF No. 13 at 31, Brown raised a similar claim in the fourth ground of her amended Rule 3.850 motion, Ex. K at 32.  The state postconviction trial court denied the claim, making the following findings:

> In her fourth claim, Defendant alleges that "the defendant was never independently determined by the trial court to be competent to proceed to trial, and therefore "her conviction by jury trial and testimony at trial were imposed without the Court's jurisdiction to do so, as she was not deemed competent."
>
> Defendant's claim is facially insufficient, as she has not pled deficient performance on the part of her counsel or proper prejudice.  Defendant points to no evidence suggesting that she was incompetent to stand trial, nor does she suggest that her attorney was aware or should have been aware of any such evidence.  The record reveals no requests for competency evaluations.  "Where there is no evidence calling a defendant's competence into question[,] counsel is not bound to seek an evaluation under Florida Rule of Criminal Procedure 3.210." <u>Groover v. State</u>, 574 So. 2d 97, 99 (Fla. 1991) (citing <u>Blanco v. Wainwright</u>, 507 So. 2d 1377 (Fla. 1987)).  Defendant has failed to state any specific facts that would demonstrate she was

> incompetent to proceed to trial. In addition, she fails to establish prejudice. *See* <u>Thompson v. State</u>, 88 So. 3d 312, 319 (Fla. 4th DCA 2012) (citations omitted) ("The focus of the prejudice inquiry is . . . whether . . . the defendant's substantive due process right not to be tried while incompetent was violated. In order to establish prejudice . . . the postconviction movant must . . . set forth clear and convincing circumstances that create a real, substantial [,] and legitimate doubt as to the movant's competency."). Consequently, Defendant is not entitled to relief on this basis.

Ex. K at 44-45 (footnote omitted).

On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. L; <u>Brown v. State</u>, 313 So. 3d 1151 (Fla. 1st DCA 2021). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* <u>Richter</u>, 562 U.S. at 99; <u>Wright</u>, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* <u>Wilson</u>, -- U.S. --, 138 S. Ct. at 1192.

"A defendant is competent to stand trial if he possesses (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and (2) a rational and factual understanding of the proceedings against him." <u>Pardo v. Sec'y, Fla. Dep't of Corr.</u>, 587 F.3d 1093, 1100 (11th Cir. 2009) (citing <u>Dusky v. United States</u>, 362 U.S. 402 (1960), and Fla. R. Crim. P. 3.211(a)(1)). Here, as the state postconviction court explained, no evidence in the record suggests Brown was incompetent to stand trial.

The record reflects that, prior to trial, the prosecutor stated on the record that Brown "has been extended a plea offer for 15 years" and it was the prosecutor's "understanding she's going to reject that and go to trial."  Ex. B at 5.  The following then took place on the record:

> THE COURT:  I may have her – I can't recollect.  Ms. Harris [defense counsel], you have informed your client of that offer?
>
> MS. HARRIS:  Yes, Your Honor.  I have explained to her what PRR means and the fact that the State of Florida would not give you any discretion in sentencing should she be convicted as charged.  I went to the jail in Walton County where she is presently held.  We had a very clear discussion about that and Ms. Brown understands that.
>
> THE COURT:  Ma'am, is that true?
>
> THE DEFENDANT:  Yeah, that's true.
>
> THE COURT:  Okay.  And you wish to go to trial?
>
> THE DEFENDANT:  Yeah.

*Id*. at 5-6.  The record further reflects that Brown was present for jury selection and the entire trial.  *See, e.g., id*. at 17, 126-35, 157, 316, 528. Defense counsel consulted with Brown during jury selection.  *Id*. at 127-35. After the State rested, the trial judge inquired of Brown regarding her decision to testify, *id*. at 366-67, and Brown did testify during the trial, *id*. at 381-439. Nothing indicates counsel performed deficiently with regard to any competency evaluation or determination.  *See* <u>Nixon v. State</u>, 932 So. 2d

1009, 1020 (Fla. 2006) ("When there is no reason to expect that a defendant is incompetent, it cannot be deficient performance if counsel does not request a competency examination.").

Moreover, to succeed on this IAC claim, Brown would also have had to show "there was a reasonable probability that [s]he would have received a competency hearing *and* been found incompetent had counsel requested the hearing." Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 479 (11th Cir. 2012). Brown did not show, or even allege, that such would have occurred. *See* ECF No. 1 at 10; Ex. K at 32.

Based on the foregoing, Petitioner Brown has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Conclusion

Petitioner Brown is not entitled to federal habeas relief. It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 15, 2022.

> S/ Martin A. Fitzpatrick
> **MARTIN A. FITZPATRICK**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**